UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
TOTAL HOME IMPROVEMENT SERVICES, INC.,   Civil Case No.: _____

                        Plaintiff,   **COMPLAINT FOR**
                                              **DECLARATORY**
    v.   **JUDGMENT WITH**
                                               **JURY DEMAND**

U.S. UNDERWRITERS INSURANCE COMPANY,

                        Defendants.
------------------------------------------------------------------------x

       Plaintiff, TOTAL HOME IMPROVEMENT SERVICES, INC. ("Total"), by and through its attorneys, STEWART SMITH, alleges the following as its Complaint for Declaratory Judgment against defendant U.S. UNDERWRITERS INSURANCE COMPANY ("US Underwriters"):

### Nature Of The Action

       1.       This is an action for declaratory relief and contribution arising from the breach of US Underwriters' obligations to provide additional insured coverage under a general liability insurance policy and an umbrella liability insurance policy that were issued to non-party KVL Painting Services Corp. ("KVL"), in connection with a construction site accident involving a KVL employee, non-party Xavier Enrique Soledispa, and his subsequent lawsuit.

       2.       KVL is a subcontractor that contracted to perform certain construction work at a project located at Central Park Tower located at 217 West 57th Street, in New York, New York (the "Project").

       3.       In its subcontract with Total, KVL agreed to provide primary and non-contributory additional insured coverage for Total, and for the Project's Owner, Broadway Trio LLC ("Trio"), and other "indemnified parties" (collectively referred to herein as the "Total Parties"), all of whom

were subsequently sued by KVL's employee, Xavier Enrique Soledispa, who was allegedly injured while working at the Project.

4. US Underwriters issued a commercial general liability ("CGL") policy and an umbrella liability policy to KVL, which were both in effect on the date of Mr. Soledispa's alleged injury.

5. US Underwriters is obligated to provide additional insured coverage to the Total Parties in connection with the *Soledispa* lawsuit, but it has breached its policies, it has failed to defend the Total Parties in that lawsuit, and it has failed to acknowledge that the Total Parties are additional insureds under its insurance policies in connection with the *Soledispa* lawsuit.

6. As the primary insurer, US Underwriters is obligated to defend and indemnify the Total Parties in the *Soledispa* lawsuit, but it has breached its obligations and failed to do so.

7. N.Y. Insurance Law § 3420(d)(2) requires that a liability insurer that disclaims liability or denies coverage for bodily injury must "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage *to the insured* and the injured person or any other claimant." *See* N.Y. Insurance Law § 3420(d)(2).

8. Critically, while US Underwriters sent its disclaimer letter to Total's **liability insurer**, it **never** notified US Underwriters' additional insured, **Total**, or any of the other additional insured Total Parties – or any of such parties' lawyers representing them in the Lawsuit – of its coverage disclaimer.

9. Therefore, US Underwriters has violated N.Y. Insurance Law § 3420(d)(2), and it has waived and/or is estopped from relying upon any policy exclusions to disclaim liability or deny coverage for the additional insured Total Parties, in connection with the *Soledispa* lawsuit.

10. Total seeks a declaration pursuant to 28 U.S.C. § 2201, *et seq.*, (1) that US Underwriters is obligated to defend and indemnify the Total Parties in the *Soledispa* lawsuit as additional insureds under its CGL insurance policy, on a primary and non-contributory basis; (2) that the Total Parties are entitled to judgment for all defense and indemnity costs incurred on their behalf in the *Soledispa* lawsuit; and (3) that the Total Parties are entitled to additional insured coverage under both of the insurance policies issued by US Underwriters in connection with the *Soledispa* lawsuit.

## The Parties

11. Plaintiff, Total, is and at all pertinent times was a domestic business corporation, duly organized under the laws of the State of New York, with its principal place of business located in Suffern, New York, and it is authorized to conduct, and does conduct, business in the State of New York.

12. Defendant, US Underwriters, is and at all pertinent times was a foreign business corporation, duly organized under the laws of the State of North Dakota, with its principal place of business located in Wayne, Pennsylvania. US Underwriters conducts business in New York, and it issued a CGL policy and an umbrella policy to KVL in New York.

## Jurisdiction And Venue

13. Subject matter jurisdiction is based upon 28 U.S.C.A. § 1332 and 28 U.S.C.A. § 2201, because the action involves citizens of different states and the amount in controversy exceeds the sum of $75,000. An actual controversy exists between the parties regarding their respective rights and obligations under the relevant insurance policies.

14. Personal jurisdiction over US Underwriters is proper, in that it transacts and/or conducts insurance business in the State of New York.

15. Venue is proper under 28 U.S.C.A. § 1391, because the *Soledispa* lawsuit giving rise to the instant insurance coverage lawsuit is venued in Queens County within this district, and because the subject CGL and umbrella policies were issued by US Underwriters to KVL in Oakland Gardens, New York, in Queens County, within this district.

### The *Soledispa* Lawsuit

16. Total seeks a declaratory judgment concerning US Underwriters' coverage obligations with respect to Mr. Soledispa's lawsuit, captioned *Xavier Enrique Soledispa v. Broadway Trio LLC, et al.*, filed at Index No. 726913/2021, in the Supreme Court of the State of New York in Queens County (the "Lawsuit"). *See Soledispa* Verified Complaint [NYSCEF No. 1] (true and correct copy attached as **Exhibit A**).

17. In the Lawsuit, Mr. Soledispa alleges that he suffered a work-related accident on September 21, 2021, when he was working at the Project, located at 217 West 57th Street, in New York, New York. *See* **Exhibit A** (Complaint), ¶¶ 62-63.

18. While the *Soledispa* Complaint alleges that Mr. Soledispa was a Total employee at the time of his alleged accident, Mr. Soledispa was actually an employee of KVL at the time of his alleged injury, as reflected in the April 16, 2024 Workers' Compensation lien notice sent or copied to counsel for all of the litigants in the Lawsuit. *See* April 16, 2024 Lien Notice (true and correct copy attached as **Exhibit B**).

19. Mr. Soledispa was allegedly injured when he fell down stairs while he was performing work for KVL at the Project.

### The Total-KVL Agreement

20. Prior to Mr. Soledispa's alleged accident, on or about August 17, 2016, Total and KVL executed a Blanket Subcontractor Agreement for KVL to perform certain "Construction

Services" work at various construction projects, including the Project at which Mr. Soledispa was allegedly injured (the "Agreement"). *See* Agreement (true and correct copy attached as **Exhibit C**), at 1 & at ¶ 3.

21. The term "Construction Services" is defined in the Agreement as "any and all construction services, including, without limitation, carpentry, electrical, plumbing, mechanical, masonry, cleaning, painting, stone work, carpet-laying, labor and punch-list work. To the extent applicable, the term Construction Services includes the provision of all tools, equipment, supplies or materials." *See* **Exhibit C** (Agreement), at ¶ 2.a.

**KVL's Indemnification Obligations and "Indemnified Parties"**

22. Under the Agreement, KVL agreed and was required to undertake certain indemnification obligations for liability for bodily injury, ***arising out of or resulting from the Construction Services***, specifically as follows:

> 5. **Indemnification.**
>
> a. With respect to any job that is governed by this Agreement, to the fullest extent permitted by law, [KVL] shall defend, indemnify, and hold harmless, at [KVL's] sole cost and expense, ***[Total], the Owner [of the Project] … and any entity [Total] [or] the Owner … is required to indemnify and hold harmless***, **and the members, officers, directors, partners, agents, employees, successors and assigns of each of them (the "*Indemnified Parties*")** from and against all liability or claimed liability: (i) ***for bodily injury*** or death ***to any person(s)***; and (ii) for any and all property damage or economic damage; and (iii) for the breach of this Agreement, including but not limited to all attorney fees in connection therewith and in connection with the enforcement of this indemnification, disbursements and related costs, ***arising out of or resulting from the Construction Services provided by [KVL], including any such Construction Services performed by or contracted through any subcontractor of any tier or level of [KVL] or by anyone for whose acts [KVL] may be held liable***. In no event shall [KVL] or any subcontractor be liable for the negligence of the Indemnified Parties. This indemnity agreement shall survive the completion of the Construction Services.

*See* **Exhibit C** (Agreement), at ¶ 5.a (emphases added).

5

23. As defined in the Agreement, and as used herein, the term "Indemnified Parties" includes Total, the Owner of the Project (*i.e.*, Trio), and any entity that Total or Trio is required to indemnify and hold harmless. *See* **Exhibit C** (Agreement), at ¶ 5.a.

24. Under Total's separate agreement with contractor Lendlease (US) Construction LMB Inc. ("Lendlease"), Total agreed to provide indemnity and additional insured coverage for Lendlease, Trio, Broadway 57th/58th Retail Investor LLC ("57/58") and Smitell LLC ("Smitell"), each of whom is an "Indemnified Party" under the Total-KVL Agreement. *See* Lendlease-Total Short Form Subcontract (true and correct copy attached as **Exhibit D**), ¶¶ 9-10 & its Exhibit C, ¶ 2.f.

25. Therefore, Total, Lendlease, Trio, 57/58 and Smitell – each of whom are defendants in the *Soledispa* Lawsuit – are all "Indemnified Parties" and "Total Parties" entitled to indemnity by KVL under the Total-KVL Agreement.

**Primary and Non-Contributory Additional Insured Coverage Required for the Total Parties**

26. Under the Agreement, KVL agreed and was required to provide additional insured coverage for the Total Parties, on a primary and non-contributory basis, for claims ***arising out of or resulting from KVL's provision of Construction Services*** under the Agreement, whether performed by KVL, or by a direct or indirect KVL employee – specifically as follows:

> **6. Insurance.**
>
> a. [KVL] shall procure and shall maintain, at its sole cost and expense, until final completion of any engagement involving [KVL's] provision of Construction Services for [Total] and for a period of three (3) years thereafter, such insurance as will protect [Total], the Owner [of the Project], [and] the Indemnified Parties … from ***claims arising out of or resulting from [KVL's] provision of Construction Services under the Agreement whether performed by a subcontractor, or by anyone directly or indirectly employed by [KVL], or by anyone for whose acts [KVL] may be liable.*** Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Construction Services are being performed.
>
> b. [KVL's] insurance shall include contractual liability coverage and additional insured coverage for the benefit of [Total], the Owner [of the Project], anyone else [Total] or

6

> the Owner [of the Project] is required to name … , and shall specifically include coverage for completed operations.  The insurance required to be carried by [KVL] shall provide that it is PRIMARY AND NON-CONTRIBUTORY.
>
> * * *
>
> e.     Unless otherwise stipulated in a written agreement signed by the Parties, [KVL] shall maintain no less than the limits specified for each of the following insurance coverages:
>
>> i.     <u>Commercial General Liability</u> using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate in each case with per project or per location endorsement for property damage and bodily injury;
>>
>> * * *
>>
>> iv.     <u>Excess or Umbrella Liability</u> following the form of the Commercial General Liability with minimum limits of $5,000,000 per occurrence and in the aggregate.

*See* **Exhibit C** (Agreement), ¶¶ 6 a., b. & e.

27.     At all pertinent times, it was KVL's and Total's intention that each of the Total Parties would be included as additional insureds under the insurance policies issued to KVL; that such additional insured coverage would be primary and non-contributory; and that the Total Parties' own insurance would be excess to KVL's insurance.

## THE INSURANCE POLICIES

### The US Underwriters CGL Policy

28.     US Underwriters issued CGL insurance policy number CL 3574411D to KVL, for the policy period from August 14, 2021 to August 14, 2022 (the "US Underwriters CGL Policy"). *See* US Underwriters CGL Policy (true and correct copy attached as **Exhibit E**), Policy Declarations.

29.     The US Underwriters CGL Policy has limits of insurance in the amount of $1 million per occurrence, and $2 million general aggregate.  *See* **Exhibit E** (US Underwriters CGL Policy), CGL Coverage Part Declarations.

30. The US Underwriters CGL Policy contains a Blanket Additional Insured endorsement (form L 723 (02-09)), which provides as follows:

### BLANKET ADDITIONAL INSURED ENDORSEMENT

**Section II – Who Is An Insured** is amended to include as an insured any person(s) or organization(s) who [KVL is] required to add as an additional insured under written contract(s), written permit(s) or written agreement(s), that require such person(s) or organization(s) to be added as an additional insured on [KVL's] policy. Such person(s) or organization(s) is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" occurring after the effective date of such written contract(s), written permit(s) or written agreement(s) that is caused, in whole or in part by:

1. [KVL's] acts or omissions; or
2. The acts or omissions of those acting on [KVL's] behalf;

* * *

Coverage provided by this endorsement will be excess over any insurance available to any additional insured under this endorsement unless a written contract(s), written permit(s) or written agreement(s) specifically requires that coverage under this endorsement is primary.

*See* **Exhibit E** (US Underwriters CGL Policy), Blanket Additional Insured Endorsement.

31. As noted above, KVL agreed in writing in a written agreement that its CGL policy shall name the Total Parties as additional insureds, on a primary and non-contributory basis.

32. Because KVL agreed in the Agreement to provide additional insured coverage for the Total Parties, the US Underwriters CGL Policy provides primary and non-contributory additional insured coverage for the Total Parties, all of whom were sued by the plaintiff in the Lawsuit.

33. With respect to the Total Parties, they are "insureds" on the US Underwriters CGL Policy "with respect to liability for 'bodily injury' … caused, in whole or in part, by [KVL's] acts or omissions, or the acts or omissions of those acting on [KVL's] behalf." *See* **Exhibit E** (US Underwriters CGL Policy), Form L 723 (02-09).

34. Therefore, the Total Parties are additional insureds under the US Underwriters CGL Policy in connection with KVL's employee's, Xavier Enrique Soledispa's, alleged injury.

**The US Underwriters Umbrella Policy**

35. US Underwriters also issued umbrella liability insurance policy number XL 1590328 to KVL for the policy period from September 19, 2021 to September 19, 2022 (the "US Underwriters Umbrella Policy"). *See* KVL Certificate of Liability Insurance (true and correct copy attached as **Exhibit F**).

36. The US Underwriters CGL Policy and US Underwriters Umbrella Policy (collectively, the "Policies") were both in force and effect on September 21, 2021, the accident date alleged in the *Soledispa* Lawsuit.

37. The US Underwriters Umbrella Policy has limits of insurance in the amount of $5 million per occurrence, and $5 million general aggregate. *See* **Exhibit F** (KVL COI).

38. Because US Underwriters breached its obligations under the Policies, the Total Parties are entitled to reimbursement for costs and expenses incurred on their behalf for their defense in the Lawsuit.

**Tenders to US Underwriters and Responses to the Tenders**

39. By letter dated September 20, 2022, NCS, on behalf of Total, the Owner (Trio) and General Contractor (Lendlease) first tendered the claim to KVL and to US Underwriters, seeking defense, indemnification and additional insured status under the CGL and Umbrella Policies for an alleged bodily injury claim involving a KVL employee. *See* September 20, 2022 tender letter, with certified mail return information (true and correct copy attached as **Exhibit G**).

40. The September 20, 2022 tender letter was received by US Underwriters on September 26, 2022. *See* **Exhibit G**.

41. By email dated September 27, 2022, US Underwriters acknowledged receipt of the September 20, 2022 tender to NCS only, and simply stated that "***we cannot accept this tender as***

9

*the policy has contractual liability limitation as well as other reasons*," without any elaboration. *See* email from Robert O'Hara, JD (US Underwriters) to Igor Stolyar (NCS) (true and correct copy attached as **Exhibit H**) (emphasis added).

42. US Underwriters' September 27, 2022 email was not addressed or copied to anyone other than NCS.

43. NCS responded by emails dated September 27, 2022 and October 25, 2022, by noting the vague response and inquiring as to whether a formal tender denial would be sent. *See* email chain between NCS and US Underwriters (true and correct copy attached as **Exhibit I**).

44. By letter dated November 22, 2022, US Underwriters denied coverage for the claim in a one-page letter, that was also sent only to NCS, and not copied to anyone else. *See* November 22, 2022 letter from Robert O'Hara, JD (US Underwriters) to Igor Stolyar (NCS), with email chain (true and correct copy attached as **Exhibit J**) (emphasis added).

45. In its November 22, 2022 letter, for the first time since receiving the tendered KVL employee bodily injury claim in late September 2022, US Underwriters stated that its policy provides no coverage for "*bodily injury resulting to any employee of the Insured [sic], arising out or [sic] in the course of employment by the insured*." *See* **Exhibit J** (November 22, 2022 Disclaimer).

46. That same date, November 22, 2022, by separate letter, US Underwriters sent a more fulsome, 7-page disclaimer letter to its insured, KVL, that was copied to NCS and to counsel defending Lendlease in the Lawsuit (the "Second November 22, 2022 Disclaimer"). *See* Second November 22, 2022 Disclaimer (true and correct copy attached as **Exhibit K**).

47. The Second November 22, 2022 Disclaimer cited the employee exclusion and several other policy provisions. *See* **Exhibit K** (Second November 22, 2022 Disclaimer).

10

48. By letter dated November 22, 2022, NCS re-tendered the claim to US Underwriters and KVL, enclosing a copy of the third-party complaint naming Total as a third-party defendant in the *Soledispa* Lawsuit. *See* NCS November 22, 2022 letter from Igor Stolyar (NCS) to KVL, with a copy to US Underwriters (true and correct copy attached as **Exhibit L**).

49. By letter dated December 8, 2022, sent only to NCS, US Underwriters repeated its coverage denial for the *Soledispa* Lawsuit. *See* December 8, 2022 letter from Robert O'Hara, JD (US Underwriters) to Igor Stolyar (NCS) (true and correct copy attached as **Exhibit M**).

50. US Underwriters has breached its contractual obligations by failing to provide additional insured coverage and defense and indemnification for the Total Parties in the *Soledispa* Lawsuit.

51. N.Y. Insurance Law § 3420(d)(2) requires that a liability insurer that disclaims liability or denies coverage for bodily injury to "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage *to the insured* and the injured person or any other claimant." *See* N.Y. Insurance Law § 3420(d)(2).

52. US Underwriters violated NY Insurance Law § 3420(d)(2), by failing to formally respond to the initial tender letter for the Lawsuit within thirty (30) days of receipt.

53. Additionally, while US Underwriters sent its disclaimer letter to Total's **liability insurer 57 days after** receiving the initial tender, it **never** notified US Underwriters' additional insured, **Total**, or any of the other Total Parties, of its coverage disclaimer.

54. Likewise, US Underwriters **never** notified Total's counsel, nor did it notify any of the other Total Parties' counsel (except for Lendlease's counsel, 57 days after it received the initial tender).

11

55. Therefore, US Underwriters has violated N.Y. Insurance Law § 3420(d)(2), and it has waived and/or is estopped from relying upon any policy exclusions to disclaim liability or deny coverage for the additional insured Total Parties, in connection with the *Soledispa* lawsuit.

56. Total has no adequate remedy at law, and it respectfully requests a declaration of its rights and those of US Underwriters, including, but not limited to, a declaration (1) that the Total Parties are additional insureds under the US Underwriters CGL and Umbrella Policies, requiring that US Underwriters defend the Total Parties on a primary, non-contributory basis in the *Soledispa* Lawsuit; (2) requiring that US Underwriters pay any verdict, judgment or settlement in the *Soledispa* Lawsuit on the Total Parties' behalf on a primary and non-contributory basis; and (3) requiring that US Underwriters reimburse Total and the Total Parties for all costs incurred in their defense in the *Soledispa* Lawsuit, from the date of first tender of the claim to US Underwriters (*i.e.*, from September 20, 2022), including interest from the date of payment of each invoice, at the statutory rate of nine percent (9%) per year.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment – Duty to Defend Additional Insureds**
**in the *Soledispa* Lawsuit)**

57. Total repeats and realleges each and every allegation made in paragraphs designated "1" through "56" inclusive, with the same force and effect as if set forth herein.

58. The Total Parties qualify as additional insureds under the Policies.

59. The allegations in the *Soledispa* Lawsuit against the Total Parties are covered within the terms of the Policies.

60. Pursuant to the terms of the Policies and under the application of New York law, US Underwriters has an obligation to defend the Total Parties in the *Soledispa* Lawsuit, on a primary and non-contributory basis, as additional insureds under the Policies.

61. Total timely demanded that US Underwriters defend and indemnify the Total Parties against the claims asserted against it in the *Soledispa* Lawsuit, on a primary, non-contributory basis.

62. US Underwriters has failed, and continues to fail, to defend the Total Parties in the *Soledispa* Lawsuit.

63. As a direct result of US Underwriters' failure to defend the Total Parties in the *Soledispa* Lawsuit on a primary and non-contributory basis, costs and expenses have been incurred on behalf of the Total Parties in defending them in the *Soledispa* Lawsuit, when it was US Underwriters' primary and non-contributory obligation to do so.

64. Based on the foregoing, Total respectfully requests a judgment declaring that the Total Parties are additional insureds under the Policies, and requiring US Underwriters to defend the Total Parties in the *Soledispa* Lawsuit, on a primary and non-contributory basis.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment – Duty to Indemnify for the *Soledispa* Lawsuit)**

65. Total repeats and realleges each and every allegation made in paragraphs designated "1" through "64" inclusive, with the same force and effect as if set forth herein.

66. Pursuant to the terms of the Policies and under the application of New York law, US Underwriters has an obligation to indemnify the Total Parties in the *Soledispa* Lawsuit, on a primary and non-contributory basis, as additional insureds under the Policies, for all amounts for which the Total Parties become legally obligated to pay as damages because of bodily injury in connection with the *Soledispa* Lawsuit.

67. US Underwriters has failed, and continues to fail, to defend the Total Parties in the *Soledispa* Lawsuit.

68. Based on the foregoing, Total respectfully requests a judgment declaring that US Underwriters is obligated to indemnify the Total Parties in connection with the *Soledispa* Lawsuit, on a primary and non-contributory basis and requiring that US Underwriters pay any verdict, judgment or settlement in the *Soledispa* Lawsuit on the Total Parties' behalf, on a primary and non-contributory basis.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Declaratory Judgment – Reimbursement of Defense and Indemnity Costs for the *Soledispa* Lawsuit)**

69. Total repeats and realleges each and every allegation made in paragraphs designated "1" through "68" inclusive, with the same force and effect as if set forth herein.

70. Pursuant to the terms of the Policies and under the application of New York law, US Underwriters has an obligation to defend the Total Parties in the *Soledispa* Lawsuit, on a primary and non-contributory basis.

71. Costs and expenses have been incurred, and continue to be incurred, including, but not limited to, attorneys' fees and other costs in connection with the defense of the Total Parties in the *Soledispa* Lawsuit, when it was US Underwriters' primary and non-contributory obligation to do so.

72. The Total Parties are entitled to reimbursement by US Underwriters of all of the attorneys' fees and other costs incurred in connection with their defense in the *Soledispa* Lawsuit, from the date of first tender of the claim to US Underwriters (*i.e.*, from September 20, 2022), together with interest from the date of payment of each invoice, at the statutory rate of nine percent (9%) per year.

73. Based on the foregoing, Total respectfully requests a judgment declaring that US Underwriters is obligated to reimburse for all of the attorneys' fees and costs incurred defending

the Total Parties in the *Soledispa* Lawsuit, from the date of first tender of the claim to US Underwriters (*i.e.*, from September 20, 2022), together with interest from the date of payment of each invoice, at the statutory rate of nine percent (9%) per year.

## **DEMAND FOR JURY TRIAL**

74. Total hereby demands a trial by jury in this action for all issues triable by jury.

**WHEREFORE**, Plaintiff Total hereby demands judgment against US Underwriters, and a declaration as follows:

a. Declaring that each of the Total Parties – Total, Lendlease, Trio, 57/58 and Smitell – are additional insureds under the US Underwriters CGL Policy and the US Underwriters Umbrella Policy with respect to the *Soledispa* Lawsuit;

b. Requiring that US Underwriters defend the Total Parties in the *Soledispa* Lawsuit, on a primary and non-contributory basis;

c. Requiring that US Underwriters indemnify the Total Parties in connection with the *Soledispa* Lawsuit, on a primary and non-contributory basis, by paying any verdict, judgment or settlement in the *Soledispa* Lawsuit on the Total Parties' behalf; and

d. Requiring that US Underwriters reimburse for all of the attorneys' fees and costs incurred in the defense of the Total Parties in the *Soledispa* Lawsuit, from the date of first tender of the claim to US Underwriters (*i.e.*, from September 20, 2022), together with interest from the date of payment of each invoice, at the statutory rate of nine percent (9%) per year;

e. Awarding Total the costs of suit incurred herein; and

f. Awarding Total such other and further relief as this Court deems just and proper.

Dated: May 8, 2024
West Conshohocken, Pennsylvania

                              **STEWART SMITH**

              By: /s/ Nancy S. Portney
                    Nancy S. Portney (NY Bar #5726880)
                    300 Four Falls Corporate Center, Suite 670
                    West Conshohocken, PA  19428
                    Phone: 484-344-5323
                    Fax:     484-534-9470
                    Email: nportney@StewartSmithLaw.com
                    *Attorneys for Plaintiff,*
                    *Total Home Improvement Services, Inc.*